

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-2000

# United States v. Williams

Precedential or Non-Precedential:

Docket 99-5431

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Williams" (2000). *2000 Decisions.* Paper 256.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/256

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 21, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5431

UNITED STATES OF AMERICA

v.

DAVID WILLIAMS,

     Appellant

On Appeal from the United States District Court
For the District of New Jersey
(D.N.J. Crim. No. 98-cr-620-2)
District Judge: Honorable Garrett E. Br own, Jr.

Submitted under Third Circuit LAR 34.1(a)
Friday, November 17, 2000

Before: SLOVITER, AMBRO, and GARTH, Circuit Judges

(Opinion Filed: December 21, 2000)

     Alan D. Bowman, P.A.
     Suite 105, Gateway I
     Newark, New Jersey 07102

     Attorney for Appellant

     Robert J. Cleary, U.S. Attorney
     George S. Leone, Chief,
     Appeals Division
     Office of the U.S. Attorney
     970 Broad Street
     Room 700
     Newark, New Jersey 07102

     Attorneys for Appellee

OPINION OF THE COURT

GARTH, Circuit Judge:

Appellant David Williams ("Williams") appeals the District Court's enhancement of his sentence in light of the Supreme Court's recent decision in Apprendi v. New Jersey, ___ U.S. ___, 120 S.Ct. 2348 (2000). W e have jurisdiction over this appeal under 28 U.S.C. S 1291. For the following reasons, we affirm the District Court's sentence.

I.

On October 7, 1998, a grand jury for the District of New Jersey issued a fourteen-count indictment, in which Williams was charged with five counts of conspiracy to distribute heroin, in violation of 21 U.S.C.S 841(a)(1), 21 U.S.C. S 846, and 18 U.S.C. S 2. An arr est warrant was issued for Williams on October 8, 1998 at his last known address, 36 Hawthorne Place, Apartment 2I, Montclair, New Jersey (the "Hawthorne Place apartment"). Williams' son, Charod Jermaine Williams, was at the apartment when the FBI agents and local police officers arrived, and he consented to a search of the apartment. The search of the Hawthorne Place apartment revealed, inter alia, 293.4 grams of heroin and 311.2 grams of cocaine.

Williams entered into a plea agr eement with the Government on Count Seven of the Indictment. The terms of the plea agreement are set forth in the Government's letter of January 29, 1999. The plea agreement states that "[t]he sentencing judge may impose the maximum term of imprisonment and the maximum fine that are consistent with the Sentencing Reform Act and the Sentencing Guidelines, up to and including the statutory maximum term of imprisonment and the statutory maximumfine." The plea agreement further specifies that"[t]he violation of 21 U.S.C. S 841(a)(1) charged in Count Seven of the Indictment . . . carries a statutory maximum penalty of 20 years' imprisonment and a $1,000,000 fine."

The plea agreement also asserts that, "[i]f David Williams enters a guilty plea and is sentenced on this charge, the United States Attorney for the District of New Jersey will not initiate any further charges against David Williams relating to the specific criminal conduct to which David Williams has agreed to plead guilty pursuant to this letter, nor will the United States Attorney for the District of New Jersey initiate any charges against David Williams relating to the 8 October 1998 seizure of contraband from 36 Hawthorne Place, Apartment 2I, Montclair, New Jersey."

In connection with the plea agreement, Williams and the Government stipulated that the amount of heroin involved in his violation of 21 U.S.C. S 841(a)(1) was approximately 67.2 grams, making the base offense level for his violation 22. In addition, the parties stipulated to a downward departure of 3 points for acceptance of personal responsibility, for a total offense level of 19.

On March 3, 1999, a plea hearing was held before the District Court. At the plea hearing, Williams answered in the affirmative when asked by the District Court, "Do you understand that you could receive up to 20 years in prison and a fine of $1 million or both?" and when asked whether he understood that "this Court has the authority to impose sentence more severe than the statutory maximum or less severe than that provided by the guidelines." (Da-27-28.) At the hearing, Williams' plea of guilty to Count Seven of the Indictment was accepted.

Also on March 3, 1999, Williams filled out an Application for Permission to Enter a Plea of Guilty, which stated, "[m]y lawyer has informed me, and I understand, that the maximum punishment which the law provides for the offense(s) charged in this Complaint/Indictment/Information is: A MAXIMUM OF 20 years imprisonment and a fine of $1,000,000 for the offense(s) charged in Count(s) 7." (Govt. Ap. 18.)

The Presentence Report ("PSR"), prepared on April 5, 1999 and revised on May 4, 1999, recommended that 361 grams of heroin and 311.2 grams of cocaine be applicable to Williams for sentencing purposes. The drug quantity was apparently based on sales of heroin in which Williams was

3

involved totaling 67.2 grams, plus the 293.4 grams of heroin and 311.2 grams of cocaine found in the Hawthorne Place apartment. The PSR calculated Williams' base offense level at 28, converting the amounts of heroin and cocaine into the equivalent total amount of marijuana and applying the Drug Quantity Table in U.S.S.G. S 2D1.1(c). The PSR then subtracted 3 points for acceptance of r esponsibility, leaving Williams' total offense level at 25. The PSR assigned Williams a total of 6 criminal history points, placing him in Criminal History Category III.

The PSR specified that "[t]he maximum ter m of imprisonment is 20 years. 21 U.S.C. S 841(b)(1)(C)." The PSR stated that the guideline range for a total of fense level of 25 and a criminal history category of III was 70 to 87 months.

A sentencing hearing was held on May 24, 1999. At the hearing, the issue was raised of whether the drugs seized from the Hawthorne Place apartment should be included in the calculation of Williams' offense level. The District Court found: "It is clear from the submission of Probation and the FBI reports, and of course the Defendant doesn't contest that that's what the FBI would testify if they wer e called,1 that the larger amount, the amount in the apartment, should be attributed to the Defendant. Therefor e, I will adopt the presentence report." (Da-50.) The District Court adopted the PSR's assignment to Williams of a total offense level of 25 and criminal history category III, for which the sentencing range is 70 to 87 months, and observed that criminal history category III "clearly understates his true criminal history." (Da-52.) The District Court then sentenced Williams to 85 months incar ceration. (Govt. Ap. 25.)

The District Court entered final judgment in this matter on June 2, 1999, and Williams filed a timely Notice of Appeal on June 3, 1999.

_____

1. Defense counsel indicated at the hearing that Williams did not doubt the FBI agents' testimony, but challenged the veracity of what Charod Williams had told the agents. (Da-44.)

4

II.

On appeal, we must determine whether the Supr eme
Court's decision in Apprendi v. New Jersey has an effect on
the District Court's sentencing of Williams, to the extent
that his sentence was altered by the District Court's finding
that the drugs found in the Hawthorne Place apartment
should be attributed to Williams for sentencing purposes.

There are two issues that we must look at in deciding
whether to apply Apprendi to this case: 1) whether the
Supreme Court intended Apprendi to apply to cases in
which the trial judge decides a fact that incr eases a
defendant's sentence under the Sentencing Guidelines, but
the sentence imposed does not exceed the statutory
maximum;[2] and 2) whether the Supr eme Court intended
Apprendi to apply to cases in which judicial fact finding
increases the possible sentence to be r eceived above the
statutory maximum, but the actual sentence is below the
statutory maximum. We exercise plenary r eview over the
District Court's application of the Sentencing Guidelines
and the possible constitutional implication of W illiams'
sentence under Apprendi. See Bose Corp. v. Consumers
Union, 466 U.S. 485, 510 (1984); United States v. Thomas,
221 F.3d 430, 433–34 (3d Cir. 2000).

In Apprendi, the defendant had pleaded guilty, pursuant
to a plea agreement, to two counts of second–degree
possession of a firearm for an unlawful purpose and one
count of third-degree unlawful possession of an
antipersonnel bomb. Under New Jersey law, the second
degree offenses carried a penalty range of 5 to 10 years and
the third–degree offense carried a penalty of 3 to 5 years.

Under the plea agreement, the State reserved the right to
request an enhanced sentence of 10 to 20 years for one of
the second-degree counts on the ground that the offense
was committed with a biased purpose, because that of fense
was based on an incident in which the defendant hadfired
_____

2. Williams raises the issue on appeal as to whether Apprendi "precludes
enhancement of a guidelines sentence by consideration of an additional
amount of narcotics not charged in the indictment on a standard of
proof less than beyond a reasonable doubt." (Appellant's Brief, at 5.)

several shots into the home of an African-American family that had recently moved to a previously all-white neighborhood. The defendant reserved the right in the plea agreement to challenge any such hate crime sentence enhancement as violating the United States Constitution.

The New Jersey trial court found that the hate crime enhancement did apply and sentenced the defendant to 12 years on that count, two years more than the maximum sentence for second-degree offenses without the enhancement, and the trial court sentenced the defendant to two shorter sentences on the other two counts to run concurrently with the 12-year sentence. The Supreme Court vacated as unconstitutional the sentence imposed by the trial court, which had been affirmed by the New Jersey Superior Court, Appellate Division and by the New Jersey Supreme Court. The Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a r easonable doubt." 120 S.Ct. at 2362-63.

In this case, Williams was charged under 21 U.S.C. S 841(a)(1), which does not specify the applicable penalties. However, S 841(b)(1) sets forth penalties dependent on the amount of drugs involved. Section 841(b)(1)(A) pr ovides for imprisonment of 10 years to life if "1 kilogram or more of a mixture or substance containing a detectable amount of heroin" is involved. Under S 841(b)(1)(B), a person may be sentenced to 5 to 40 years imprisonment for a violation involving "100 grams or more of a mixtur e or substance containing a detectable amount of heroin." Finally, S 841(b)(1)(C) states that, "[i]n the case of a controlled substance in schedule I [which includes her oin] . . ., except as provided in subparagraphs (A), (B), or (D), such person shall be sentenced to a term of imprisonment of not more than 20 years."

Under the plea agreement, Williams stipulated to 67.2 grams of heroin being involved in Count Seven and/or his relevant conduct alleged in Counts Five, Eight, and Nine of the Indictment, for which the applicable statutory maximum sentence is 20 years, under 21 U.S.C.

6

S 841(b)(1)(C).3 The base offense level for between 60 and 80 grams of heroin under the Sentencing Guidelines is 22, and the plea agreement recommended a 3-point r eduction in offense level for acceptance of responsibility. Williams was placed in criminal history category III by the PSR and by the District Court. With a total offense level of 19 and criminal history category III, his sentence range under the Sentencing Guidelines was 37 to 46 months.

At the sentencing hearing, the District Court found that the amount of drugs involved in Williams' of fense was 361 grams of heroin and 311.2 grams of cocaine, on the recommendation in the PSR that the drugs found at Hawthorne Place apartment should be attributed to Williams. This increased Williams' base offense level to 28. At a total offense level of 25 (28 minus 3 points for acceptance of responsibility) and a criminal history category of III, the sentencing range for Williams was 70 to 87 months. The District Court sentenced Williams to 85 months.

A.

Initially, we hold that Apprendi does not apply to the increase in Williams' sentence under the Sentencing Guidelines. Apprendi did not dir ectly address this issue, because it concerned a sentence under state law. With regard to the Sentencing Guidelines, the Court stated: "The Guidelines are, of course, not before the Court. We therefore express no view on the subject beyond what this Court has already held." 120 S.Ct. at 2366 n.21 (citing Edwards v. United States, 523 U.S. 511 (1998)).

In Edwards v. United States, the Supr eme Court heard a claim by several defendants that a district judge's sentences of them for violation of 21 U.S.C. SS 841 and 846 involving cocaine and crack distribution wer e unlawful, insofar as they were based on crack, because the jury was

_____

3. That this statutory maximum was applied to W illiams is confirmed in the plea agreement, by the District Court at the plea hearing, in Williams' Application for Permission to Enter a Plea of Guilty, and in the PSR.

7

not presented with the issue of whether their conduct involved cocaine or crack and the Sentencing Guidelines imposed higher penalties for distribution of crack than for distribution of cocaine. 523 U.S. at 513. The Court upheld the District Court's sentences, stating "[t]he Sentencing Guidelines instruct the judge in a case like this one to determine both the amount and the kind of`controlled substances' for which a defendant should be held accountable--and then to impose a sentence that varies depending upon amount and kind." Edwar ds, 523 U.S. at 513-14 (emphasis in text). The Court noted that the outcome of the case may have been differ ent if the District Court's sentence had exceeded the maximum per mitted by statute. The Court explained:

> Of course, petitioners' statutory and constitutional claims would make a difference if it wer e possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy. That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines. USSG S 5G1.1. But, as the Gover nment points out, the sentences imposed here wer e within the statutory limits applicable to a cocaine-only conspiracy, given the quantities of that drug attributed to each petitioner.

Edwards, 523 U.S. at 515.

The Court also stated in Apprendi that "nothing in this history [of requiring a jury determination of guilt for every element of the crime charged] suggests that it is impermissible for judges to exercise discretion--taking into consideration various factors relating both to offense and offender--in imposing judgment within the range prescribed by statute." 120 S.Ct. at 2358. Though the application of the Sentencing Guidelines by judges is not entir ely discretionary, see United States v. Mistr etta, 488 U.S. 461, 491 (1989) (stating that "the Guidelines bind judges and courts in the exercise of their uncontested r esponsibility to pass sentence in criminal cases"), the Sentencing Guidelines are in effect a codification of judges' exercise of discretion in sentencing precisely in the manner described by the Court. As Chief Judge Becker stated in his

8

concurrence in United States v. Mack,"the Sentencing Guidelines are . . . a constitutional mechanism for channeling the discretion that a sentencing court would otherwise enjoy." 2000 WL 1456245, at 14 (3d Cir . Sept. 29, 2000) (Becker, J., concurring).

As in Edwards, the District Court'sfinding in this case increased Williams' sentence under the Sentencing Guidelines, but the sentence did not exceed the statutory maximum. Accordingly, we hold that the District Court's finding was a permissible exercise of discretion, to the extent that the finding altered Williams' sentence under the Sentencing Guidelines. This holding is bolster ed further by our observation in United States v. Ceper o that, "[b]ecause application of the Sentencing Guidelines in this case does not implicate a fact that would increase the penalty of a crime beyond the statutory maximum, the teachings of Apprendi v. New Jersey, ___ U.S. ___, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), are not relevant her e." 224 F.3d 256, 267 n.5 (3d Cir. 2000).

B.

We must now turn to the issue of whether the fact that the District Court's finding increased the possible statutory maximum under 21 U.S.C. S 841(b)(1) implicates Apprendi. In Apprendi, the Court was ambiguous as to whether its holding should apply in such a situation. The Court in Apprendi characterized the constitutional rule as: " `[I]t is unconstitutional for a legislature to r emove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' " Appr endi, 120 S.Ct. at 2363 (quoting Jones, 526 U.S. at 252–53 (opinion of Stevens, J.)) (emphasis added). The Court also stated that " `any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a r easonable doubt.' " 120 S.Ct. at 2355 (quoting Jones , 526 U.S. at 243 n.6) (emphasis added). By those formulations, it could be argued that the Apprendi rule does apply to Williams, because the District Court's finding increased the

9

"prescribed range of penalties" and the "maximum penalty" to which Williams was exposed, even though his actual penalty did not exceed 20 years.

However, as discussed earlier, the Court stated in Apprendi: "We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion--taking into consideration various factors relating both to offense and offender--in imposing a judgment within the range prescribed by statute." 120 S.Ct. at 2358. This statement suggests that a District Court's sentence that is under the statutory maximum cannot be constitutionally objectionable under Appr endi.4

Despite the ambiguity in Apprendi, we hold that it does not apply to Williams' sentence for several r easons. First and foremost, though the District Court's finding regarding the amount of drugs substantially increased the possible statutory maximum sentence under 21 U.S.C. S 841(b)(1), we hold that Apprendi is not applicable to Williams' sentence, because the sentence actually imposed (seven years and one month) was well under the original statutory maximum of 20 years.

Second, this 20-year maximum sentence was confir med several times in the course of Williams' plea and sentence. The plea agreement specified that the "statutory maximum penalty" for Williams' violation was 20 years imprisonment. The District Court confirmed at the plea hearing that

_____

4. In this Circuit, we have addressed Apprendi only tangentially, in Cepero, discussed above, and in Judge Becker's concurrence in United States v. Mack, 2000 WL 1456245 (3d Cir. Sept. 29, 2000). Judge Becker set forth a two-step "Apprendi inquiry" in Mack:

> A court must first determine the "pr escribed statutory maximum" sentence for the crime of which the defendant was convicted and assess whether the defendant's ultimate sentence exceeded it. If it did, the court must consider the second-order Apprendi question: whether the enhanced sentence was based on "the fact of a prior conviction." If it was, then the sentence is constitutional. If it was
> not, then the sentence is unconstitutional.

2000 WL 1456245, at 9. Under the Apprendi test as formulated by Judge Becker, therefore, Williams' challenge would fail because he could not get beyond step one.

Williams understood that he "could r eceive up to 20 years in prison." Williams' application to enter a guilty plea stated that he understood that the maximum punishment under law for his offense was 20 years in prison. Finally, the PSR stated that 20 years was the maximum sentence under 21 U.S.C. S 841(b)(1)(C).

Third, based on the amount of drugs that the District Court found attributable to Williams, it would not be possible for the District Court to sentence W illiams to a sentence exceeding 20 years under the Sentencing Guidelines. Even with an offense level of 28 (Williams' offense level with the drugs found by the District Court and without the 3-point downward adjustment) and criminal history category VI (the highest), the maximum sentence for Williams' offense under the Guidelines would be 175 months, or 14 years and 7 months. Therefor e, the District Court's finding did not actually "expose" W illiams to a sentence above 20 years, as long as the District Court sentenced Williams within the range pr ovided in the Sentencing Guidelines.

Fourth, the District Court's finding that the drugs in the Hawthorne Place apartment were attributable to Williams for sentencing purposes could be characterized as a finding of "relevant conduct" under the Sentencing Guidelines. Under U.S.S.G. S 1B1.3(a)(2), acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction" may be consider ed as "relevant conduct" in calculating a defendant's base of fense level. As the Supreme Court stated in Edwards , "whether the judge believed that [the presence of the drugs in the Hawthorne Place apartment] was part of the `offense of conviction,' or the judge believed that it was [relevant conduct, t]he Guidelines sentencing range . . . is identical." 523 U.S. at 514-15. Therefore, if the District Court found that the drugs in the Hawthorne Place apartment wer e attributable to Williams as relevant conduct, the finding would affect the sentencing range under the Sentencing Guidelines but would not affect the range under the statute.

Finally, at the sentencing hearing, the District Court expressed dissatisfaction with the low criminal history category assigned to Williams and indicated that the court

11

had discretion to depart upwards under U.S.S.G. S 4A1.3.5 Indeed, the PSR lists ten convictions between 1958 and 1970 for which no criminal history points wer e assigned. In addition, several of Williams' prior convictions resulted in substantial sentences of incarceration, including a sentence of 12 years in prison in 1986 for possession with intent to distribute heroin (and tax evasion).

In reviewing Williams' criminal history and considering an upward departure, the District Court stated:

> I do not feel that it is necessary to consider the [upward] departure, although ther e are very, very good grounds for that because his criminal history category does not adequately predict his true criminal history of likelihood of repeat offense.
>
> So, if we didn't have that range [of 70 to 87 months], I would have to consider [an upward departur e]. . . .
>
> So we have a lengthy criminal history her e for a number of very serious offenses. As I say, he would be a career offender by departure because there certainly is a very strong likelihood of repeat of fense and the criminal history category of three clearly understates his true criminal history but I decline to r each that at this time because, looking at the offense level of 25 and criminal history category of three, I find that the 70 to 87 month range is sufficient to protect the public at this time. If I were wrong as to the of fense level, or criminal history category, and it were lesser , I would certainly consider the upward departure for adequacy of criminal history.

(Da–50, Da–52.)

In stating that an upward departure might be appropriate but that the range of 70 to 87 months was sufficient, the District Court suggested that Williams' criminal history

---

5. Section 4A1.3 allows the District Court to consider departing from the applicable Guideline range "[i]f reliable information indicates that the criminal history category does not adequately r eflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes."

12

contributed to the sentence of 85 months. The fact that an upward departure from a lower sentence range would likely be within the District Court's discretion based on Williams' lengthy criminal history lends further support to our decision not to vacate the sentence on Appr endi grounds.

III.

For the foregoing reasons, we affir m the District Court's sentence.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

13