**UNITED STATES of America,**
**Appellant**

v.

**Vernon Earl PARMELEE a/k/a**
**Vernon Earl Parmalee**

No. 00–2941.

United States Court of Appeals,
Third Circuit.

Argued Dec. 10, 2002.

Filed Feb. 11, 2003.

Christopher J. Christie, United States Attorney, George S. Leone, Chief, Appeals Division, Norman Gross [Argued], Assistant United States Attorney, United States Attorney's Office, Camden, for Appellant United States of America.

Neil G. Duffy, III, William Strazza [Argued], Union, for Appellee Vernon Earl Parmelee.

Before FUENTES and GARTH, Circuit Judges, and WALLACH, Judge.*

**OPINION**

WALLACH, Judge.

The United States (the "Government") appeals the judgment of sentence imposed by the district court upon Vernon Earl Parmelee ("Parmelee"). Parmelee was charged with four counts of possession of child pornography using media that traveled in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B) (2000).[1] A jury convicted Parmelee on all four counts. At the sentencing hearing on August 21, 2000, the district court refused to apply the cross-reference to the child pornography trafficking sentencing guideline, United States Sentencing Guidelines Manual ("U.S.S.G.") § 2G2.2,[2] found in the child pornography possession sentencing guideline, U.S.S.G. § 2G2.4(c)(2), on the ground that application of the cross-reference would violate the then recently issued *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The court also refused to apply the two-level enhancement pursuant to U.S.S.G. § 2G2.4(b)(2), which applies when the offense involved the possession of "ten or more ... items, containing a visual depiction involving the sexual exploitation of a minor." We have jurisdiction over the Government's appeal pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. For the reasons that follow, we reverse Parmelee's sentence and remand this case to the district court for re-sentencing consistent with this opinion.

**I.**

On September 16, 1998, a local police officer from the Edison Police Department and an investigator from the New Jersey Division of Youth and Family Services ("DYFS") interviewed Parmelee's eight-year-old son, William, regarding reported unlawful activities at his home. William told the investigators that he had observed his father download pornographic images involving children, teenagers, and adults onto computers that his father kept in the basement of their home.

Later that day, Edison police officers and FBI agents obtained a search warrant and searched Parmelee's home. During the search, the authorities went to the basement where Parmelee's computers were located. Parmelee admitted that the computers in the basement were his. Investigators seized evidence, including four recordable compact discs ("CD–Rs").

Recorded on each of the CD–Rs seized by investigators were numerous photographs depicting minor children engaged in sexually explicit conduct.[3] A subse-

---

* The Honorable Evan J. Wallach of the United States Court of International Trade, sitting by designation.

1. The statute provides as follows:
   (a) Any person who—
      (5) either—
         (B) knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or trans-

ported in interstate or foreign commerce by any means, including by computer, shall be punished as provided in subsection (b).
   18 U.S.C. § 2252A(a)(5)(B) (2000).

2. The Guidelines Manual is codified under the Appendices of Title 18 of the United States Code, Crimes and Criminal Procedure, Sentencing Guidelines for the United States Courts.

3. Among the photographs on the four CD–Rs were:
   (1) RICOH CD–R marked "Jpegs"—(a) a naked, minor girl who appears to be scream-

quent search of Parmelee's residence uncovered, among other materials, another CD–R labeled "Personal Files," which contained various documents reflecting purported "contracts" and "agreements" to the effect that Parmelee's wife, Clara, was Parmelee's slave.

Joseph DiGiacomo, Parmelee's former business partner and best friend, who lived in the Parmelee household for almost two years between 1995 and 1997, told law enforcement investigators that he had observed Parmelee showing William pornographic images that Parmelee downloaded from the Internet onto his computer. DiGiacomo also told investigators that Parmelee treated his wife as his slave; ordered her to appear topless in the home; ordered her to dress provocatively and seek out other men for sex; beat her, on at least one occasion when William was present; and disciplined her, on at least one occasion by tying her up and leaving her on the bedroom floor for two days.

On October 8, 1998, a federal grand jury indicted Parmelee on four counts of possession of child pornography using media that traveled in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B). Each count pertained to one of the four CD–Rs seized from Parmelee's home.

Parmelee's case proceeded to trial on February 2, 2000. At trial, DiGiacomo testified that he personally observed Parmelee download pornographic images from the Internet and store them on CD–Rs. DiGiacomo also testified that Parmelee told DiGiacomo that Parmelee intended to barter the pornographic images for goods and services. Parmelee's wife, Clara, and a former house-mate, Kathy Adams, each testified that Parmelee had shown them images of child pornography on his computer. On February 3, 2000, a jury re-

ing in pain as she is digitally penetrated on a bed; (b) two Asian girls, one naked and kneeling with a dog collar and leash around her neck; the other standing in a see-through bodysuit holding a whip in one hand and a leash in the other; (c) a series titled "Young Bondage" depicting a naked, minor female with a metal collar around her neck that was approximately two-and-a-half inches thick and had chains coming from it connected to straps around her wrists; (2) Maxell CD–R marked "Jpegs 0–9 10–13 14–17 18–21 22–29 30–39 40–49 50–59 60–up Cheelder Nudists Show"—(a) a picture of a naked, minor female lying on a towel, spreading her legs and touching her labia; (b) a picture of a naked, minor female of native Indian descent, lying down and inserting a partially peeled banana into her vagina; (c) a picture of a naked, minor female lying on a bed with her legs partially spread and a scarf tied around her waist; (3) RICOH CD–R marked "Jpegs Tits Kinky"—(a) a picture of a minor female wearing only thigh high stockings and kneeling on a bed with her arms over her head; (b) a picture of a naked, minor female standing and holding the neck of a bottle which has been inserted into her vagina; (c) a picture of a naked, minor female sitting on a rattan chair with her legs spread to expose her vaginal area; (d) a picture entitled "OBABY B–1POKE" depicting a partially clothed baby having a pacifier inserted into her vagina; (4) TDK CD–R marked "Jpegs–Standard Stuff"—(a) a picture of a naked, minor female on a bed with her legs raised, spreading her labia with her hand to expose her vaginal area; (b) a picture of a naked, minor female partially dressed in panties and a t-shirt, engaging in genital-genital intercourse with a male; (c) a picture of a naked, minor female standing with one knee on a rattan chair holding a drape made of netting in one hand. The various CD–Rs also contained photographs of: minor females blindfolded with their hands and feet tied to a table; a minor female with her finger inserted into her vagina; a minor female about to perform fellatio on an older man; a minor female sitting with her legs straight up in the air in a "V" position while holding a bottle inserted into her vagina and what appears to be either a penis or a banana inserted into her mouth. Pre–Sentence Investigation Report ("PSR") at ¶ 21, 22.

turned a guilty verdict on all four counts against Parmelee.

In preparation for sentencing, the Probation Office prepared a Pre–Sentence Investigation Report ("PSR").[4] The Guidelines Manual section that applies to violations of 18 U.S.C. § 2252A(a)(5)(B) is found in U.S.S.G. § 2G2.4, entitled "Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct." Within the text of § 2G2.4(c)(2) is a cross-reference to § 2G2.2, entitled "Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic." Specifically, the cross-reference states:

> If the offense involved trafficking in material involving the sexual exploitation of a minor (including receiving, transporting, shipping, advertising, or possessing material involving the sexual exploitation of a minor with intent to traffic), apply § 2G2.2.

U.S.S.G. § 2G2.4(c)(2).

██ The Probation Office applied the cross-reference to U.S.S.G. § 2G2.2 in Parmelee's case because the offense involved the receipt of material that involved the sexual exploitation of a minor. U.S.S.G.

§ 2G2.2 includes not only a higher base offense level than U.S.S.G. § 2G2.4 (17 instead of 15), but also contains several specific offense characteristics which are not included in U.S.S.G. § 2G2.4. These include two characteristics that the Probation Office applied here: U.S.S.G. § 2G2.2(b)(3), which permits a four-level increase if the offense "involved material that portrays sadistic or masochistic conduct or other depictions of violence," and U.S.S.G. § 2G2.2(b)(4), which permits a five-level increase if the defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor,"[5] U.S.S.G. §§ 2G2.2(b)(3), 2G2.2(b)(4).

The Probation Office also applied two additional specific offense characteristics from U.S.S.G. § 2G2.2: a two-level enhancement if "the material involved a prepubescent minor or a minor under the age of twelve years," U.S.S.G. § 2G2.2(b)(1); and a two-level enhancement "if a computer was used for the transmission of the material or a notice or advertisement of the material," U.S.S.G. § 2G2.2(b)(5).

Finally, the Probation Office added two levels for Parmelee's aggravating role in the offense, pursuant to U.S.S.G. § 3B1.3, entitled "Abuse of Position of Trust or Use of Special Skill." These adjustments, based on specific characteristics and Par-

---

4. The Probation Office prepared the pre-sentence investigation report using the 1998 edition of the United States Sentencing Guidelines Manual.

5. The Pre–Sentence Investigation Report determined that the five-level enhancement for engaging in a "pattern of activity involving the sexual exploitation or abuse of a minor," U.S.S.G. § 2G2.2(b)(4), should be applied because Parmelee repeatedly exposed his son to the pornographic images Parmelee downloaded from the Internet. For the U.S.S.G. § 2G2.2(b)(4) enhancement to apply, however, Parmelee had to sexually exploit a minor in the manner prescribed in 18 U.S.C.

§ 2251(a) and covered by U.S.S.G. § 2G2.1 by using minors to produce, not merely traffic in, child pornography. *See United States v. Ketcham,* 80 F.3d 789, 793–95 (3d Cir.1996). There was no evidence in this case that Parmelee personally produced any child pornography, so this particular enhancement does not apply. Its exclusion, however, does not alter the adjusted offense level to which Parmelee is subject under application of the cross-reference; application of U.S.S.G. § 2G2.2 exposes Parmelee to a five-level distribution enhancement under U.S.S.G. § 2G2.2(b)(2).

melee's role in the offense, resulted in an adjusted and total offense level of 32. PSR ¶ 52. Due to two criminal history points from prior criminal convictions, a criminal history category of II was established. *Id.* ¶ 66. Based on a total offense level of 32 and a criminal history category of II, the Probation Office calculated the guideline range for imprisonment at 135 to 168 months. *Id.* ¶ 101.

Parmelee objected to the use of the cross-reference to U.S.S.G. § 2G2.2 on the ground that there was no evidence that he trafficked in, as opposed to merely possessed, material involving the exploitation of a minor. He also objected to the four-level enhancement for sadistic material, claiming that, although the images on the discs did depict children in bondage, such images could not be described as sadistic or masochistic. Parmelee also objected to the five-level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, claiming that there was no credible evidence to support that enhancement. Finally, he objected to the two-level enhancement for use of a computer to transmit the material because he claimed there was no evidence that he employed a computer to obtain the images contained on the discs.

On June 26, 2000, the Supreme Court issued *Apprendi*. The sentencing hearing in Parmelee's case was conducted on August 21, 2000. At the sentencing hearing, the district court expressed its concern that "a so-called sentencing consideration, such as allegations of trafficking or receiv-

ing pornography, rather than merely possessing it could or should be employed here when that is itself an element of a more aggravated offense in the same package of statutes with which we are involved." Transcript of Sentencing Hearing, App. at 288.[6] The court noted that "Parmelee was prosecuted on a pure possession statute ... when other sections within that very statute or statutory family provided for more aggravated offenses with 15–year penalties rather than 5–year penalties."[7] *Id.* The district court remarked that "in light of such Supreme Court decisions as *Apprendi v. New Jersey* ... and *Jones v. United States* ... the Supreme Court might have some difficulty with essentially imposing a sentence for a more aggravated offense than the one on which the indictment was secured and the convictions secured." *Id.* at 288–89. The court, however, acknowledged that "there are cross-references in the guidelines." *Id.* at 289.

The district court asked the Government if the court could make findings regarding Parmelee's relevant conduct, and the Government replied that the court could determine that "the conduct in this case was much more egregious than what was charged in the indictment." *Id.* at 289. The court then stated:

> I am prepared for the purposes of this argument to state that I could find by a preponderance of the evidence at least that there was [ ] present here the receiving, transporting, shipping and/or

---

6. All appendix references are to the "Appendix for Appellant," submitted by the Government.

7. Section 2252A(b)(1) establishes a fifteen-year maximum sentence for a violation of paragraph (1) (mailing, transporting, or shipping of child pornography), paragraph (2) (receiving or distributing child pornography),

paragraph (3) (reproducing child pornography), or paragraph (4) (selling or possessing with intent to sell child pornography) of subsection (a); section 2252A(b)(2), on the other hand, establishes a five-year maximum sentence for a violation of paragraph (5) (possession of child pornography) of subsection (a). 18 U.S.C. § 2252A(b)(1), (b)(2).

advertising of material here, in addition to the mere possession.

*Id.* at 290–91.

Even though the court conceded that it could find the facts necessary to apply the cross-reference, the court concluded that, although not "absolutely compelled to do so in this case," it would decline to apply the cross-reference to U.S.S.G. S 2G2.2, in light of *Apprendi*. *Id.* at 291. The court acknowledged that, given Parmelee's four convictions "under the statute at least he could be sentenced consecutively for a total of 20 years imprisonment," which exceeded the top of the guidelines range, 168 months, as calculated by the Probation Office under U.S.S.G. § 2G2.2. *See id.* Given that 20–year maximum for all four counts, the court also acknowledged that "it might be argued that *Apprendi* and its holding do not directly fit the facts of this case." *Id.* at 291–92. Nonetheless, the district court refused to apply the cross-reference.

After concluding that it would not apply the cross-reference to U.S.S.G. § 2G2.2, but would instead calculate the offense level under U.S.S.G. § 2G2.4, the district court noted that, in addition to employing a base offense level of 15 rather than 17, neither the four-level enhancement for sadistic or masochistic images, nor the five-level enhancement for engaging in a pattern of activity involving the sexual abuse of a minor (both of which arise exclusively under U.S.S.G. § 2G2.2), could be applied in this case. *Id.* at 294. The court did, however, apply certain enhancements

available to it under U.S.S.G. § 2G2.4, including the U.S.S.G. § 2G2.4(b)(1) enhancement for possession of pornographic material involving a minor under the age of twelve, the U.S.S.G. § 2G2.4(b)(3) enhancement for the use of a computer to acquire the child pornography, and the enhancement for abuse of a position of private trust found in U.S.S.G. § 3B1.3. *Id.*

The district court's refusal to apply the cross-reference resulted in an eleven-level reduction in the total offense level calculated by the Probation Office (from 32 to 21) and a consequent reduction in the applicable guidelines range from 135–168 months to 41–51 months. *See id.* at 294–95.

Once the district court determined that it would apply U.S.S.G. § 2G2.4 rather than U.S.S.G. § 2G2.2, the Government sought the application of a two-level enhancement available exclusively under U.S.S.G. § 2G2.4, arguing that the court should apply the enhancement because "the offense involved possessing ten or more books, magazines, periodicals, films, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor." *Id.* at 305. After noting there was no evidence that Parmelee had possessed any of the child pornography images as "hard copy visual depictions" that "were taken off the discs," the court declined to apply the enhancement, reasoning that the units to be counted under U.S.S.G. § 2G2.4(b)(2) were the four recordable compact discs and not the multiple digital files on each of those discs. *Id.* at 305–08.[8]

---

[8]. Although we need not fully address the district court's decision as to the number of items Parmelee possessed because we reverse the sentence on other grounds, we note that an amendment to the Sentencing Guidelines, promulgated after the sentencing hearing, clarifies the meaning of the term "item" in U.S.S.G. § 2G2.4(b)(2). Effective November 1, 2000, the Sentencing Commission adopted Amendment 592 to the Sentencing Guidelines, which promulgated the following application to U.S.S.G. § 2G2.4:

For purposes of subsection (b)(2), a file that (A) contains a visual depiction; and (B) is stored on a magnetic, optical, digital, other electronic, or other storage medium or device, shall be considered to be one item.

After denying Parmelee's motion for a downward departure under U.S.S.G. § 4A1.3 (based on Parmelee's claim that his Criminal History Category significantly over-represented the seriousness of his criminal history), the court imposed concurrent sentences of 48 months each on all four counts.

## II.

■ We exercise plenary review over the district court's application of the Sentencing Guidelines, and the possible 5th and 6th Amendment constitutional implication, of Parmelee's sentence under *Apprendi*. *United States v. Williams*, 235 F.3d 858, 861 (3d Cir.2000) (citing *Bose Corp. v. Consumers Union*, 466 U.S. 485, 510, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)).

## III.

In this case, we confront the issue of whether a sentencing court can apply the trafficking cross-reference of U.S.S.G. § 2G2.4(c)(2) to enhance a defendant's sentence for possession of child pornography, when the court finds by a preponderance of the evidence that the requisites for the trafficking cross-reference have been es-

tablished, even though the defendant was convicted only of possession of materials depicting a minor engaged in sexually explicit conduct.

The district court stated that it could find, by a preponderance of the evidence, that the requisites for the U.S.S.G. § 2G2.4(c)(2) cross-reference (i.e., that Parmelee received, transported, shipped and/or advertised, in addition to merely possessed, child pornography) had been established. However, the court concluded that, based on *Apprendi*, those factual findings had to be made by a jury, based on proof "beyond a reasonable doubt." App. at 291. The court reasoned that application of the cross-reference, and the specific offense characteristics resulting from application of the cross-reference, would cause Parmelee to be sentenced as if he had been convicted of trafficking in child pornography, even though he had been charged and convicted only of possession of child pornography. App. at 288. Because the court believed that *Apprendi* prohibited such a result, it refused to apply the cross-reference.

In *Apprendi*, the defendant fired several shots into the home of an African–Ameri-

---

If the offense involved a large number of visual depictions, an upward departure may be warranted, regardless of whether subsection (b)(2) applies.
U.S.S.G. § 2G2.4, Application Note 2 (Nov. 2000). A post-sentencing amendment to a guideline, or to its comments, should be given retroactive effect if the amendment "clarifies" the guideline or comment in place at the time of sentencing. *United States v. Marmolejos*, 140 F.3d 488, 490 (3d Cir.1998). Explaining the reason for the amendment, the Commission wrote:
    [T]he amendment *clarifies* the meaning of the term "item" in subsection (b)(2) of § 2G2.4.... The amendment adopts the holding of all circuits that have addressed the matter that a computer file qualifies as an item for purposes of the enhancement. The amendment also provides for an invited

upward departure if the offense involves a large number of visual depictions of child pornography, regardless of the number of "items" involved. This provision invites courts to depart upward in cases in which a particular item, such as a book or a computer file, contains an unusually large number of pornographic images involving children.
Amendment 592, Supp. to App. C. at 50 (2001) (emphasis added). Because Amendment 592 clarifies U.S.S.G. § 2G2.4(b)(2), the amendment would apply retroactively to Parmelee in this case and would contradict the district court's conclusion that a computer file is not an "item" for purposes of U.S.S.G. § 2G2.4(b)(2). However, as stated, because we reverse the district court's judgment of sentence on other grounds, we need not reach this point.

can family; after his arrest, the defendant allegedly stated that he did not know the occupants personally, but did not want African–Americans in his neighborhood. *Apprendi*, 530 U.S. at 469, 120 S.Ct. 2348. The defendant later denied having made such a statement. *Id.* at 469, 471, 120 S.Ct. 2348. The defendant pled guilty in state court to two counts of second-degree possession of a firearm for an unlawful purpose, each of which carried a sentencing range of 5 to 10 years, and to one count of third-degree unlawful possession of an antipersonnel bomb, which carried a penalty of 3 to 5 years. *Id.* at 469–70, 120 S.Ct. 2348. He was sentenced to 12 years, however, because a separate "hate crimes" statute permitted an enhancement when the sentencing judge found, by a preponderance of the evidence, that the defendant acted with bias towards a protected group. *Id.* at 470, 491–92, 120 S.Ct. 2348; *see also N.J. Stat. Ann.* § 2C:44–3(e) (2000).

The Supreme Court concluded that the New Jersey sentencing procedures violated the 6th Amendment right of the accused to a trial by jury and held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

At the time of the sentencing hearing in this case the district court did not have the benefit of Third Circuit precedent addressing the effect of *Apprendi* on sentencing proceedings. This court has, however, applied *Apprendi* numerous times since, and has frequently repeated the position that the limitations of *Apprendi* do not apply unless the sentence imposed exceeds the statutorily prescribed maximum. *See United States v. Vazquez*, 271 F.3d 93, 98 (3d Cir.2001); *United States v. DeSumma*,

272 F.3d 176, 181 (3d Cir.2001) ("This Court has since concluded ... that when the actual sentence imposed does not exceed the statutory maximum, Apprendi is not implicated."); *Williams*, 235 F.3d at 862–63 (stating "that Apprendi does not apply to the increase in a defendant's sentence under the U.S.S.G. where the sentence imposed does not exceed the statutorily prescribed maximum").

■ The Supreme Court recently confirmed the "distinction the law has drawn between the elements of a crime and factors that influence a criminal sentence," *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 2410, 153 L.Ed.2d 524 (June 24, 2002), and reiterated that *Apprendi* restricts only those factual findings that result in a sentence above the statutory maximum penalty. The issue in *Apprendi*, the Court explained, "was a sentencing factor that did 'swell the penalty above what the law has provided.'" *Id.* at 2417. In those cases in which a sentencing factor or enhancement does not increase the penalty for a crime beyond the prescribed statutory maximum, *Apprendi* is not implicated and the facts supporting the sentencing factor or enhancement need not be charged in an indictment or submitted to a jury. *Id.* at 2417–18. The Court explained that once the jury finds a defendant guilty,

> *Apprendi* says that the defendant has been convicted of the crime; the Fifth and Sixth Amendments have been observed; and the Government has been authorized to impose any sentence below the maximum. That is why, as *Apprendi* noted, "nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range*." ... The judicial factfinding does not "expose a

defendant to a punishment greater than that otherwise legally prescribed."

*Id.* at 2418 (citation omitted).

The factual findings that the district court provisionally made, i.e., that Parmelee had "receiv[ed], transport[ed], shipp[ed] and/or advertis[ed] ... material ... in addition to mere possession," App. at 290–91, are not facts that would shift the elements of the offense of conviction from trial to sentencing. The jury found, beyond a reasonable doubt, all of the elements necessary to convict Parmelee of four counts of possessing child pornography. He was therefore subject to "any sentence below the maximum." *See Harris,* 122 S.Ct. at 2418; *see also United States v. Gamez,* 301 F.3d 1138, 1147–48 (9th Cir.2002) (stating that *Apprendi* does not bar application of a cross-reference, even if cross reference applies to an offense for which defendant was not charged or convicted).

■ Each of the four counts on which Parmelee was convicted carry a maximum statutory sentence of "not more than 5 years" (60 months). *See* 18 U.S.C. § 2252A(b)(2). Thus, the sum of the statutory maximum sentences Parmelee faced on all four counts was 240 months.[9] This sum exceeds the applicable guidelines range of 135–168 months suggested by the Probation Office that arose by application of the cross-reference from U.S.S.G. § 2G2.4 to U.S.S.G. § 2G2.2. Thus, *Apprendi* is not implicated under the Probation Office's recommended sentence here because application of the cross-reference and resultant enhanced sentence would fall below the statutory maximum of 240 months.[10] In a case involving multiple counts of conviction, the Sentencing Guidelines instruct that if the total punishment mandated by the guidelines exceeds highest statutory maximum on a single count, consecutive terms of imprisonment shall be imposed to the extent necessary to achieve the total punishment.[11] In particular,

9. The authority for multiplying statutory maximum sentences on multiple counts of conviction is found in 18 U.S.C. § 3584 (2000), which provides for the imposition of consecutive terms of imprisonment "[i]f multiple terms of imprisonment are imposed on a defendant at the same time." 18 U.S.C. § 3584(a) (2000). In determining whether to impose either consecutive or concurrent sentences, a sentencing court is instructed to consider, among other factors, the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2). Consideration of these factors, the nature of Parmelee's offense, and the fact that Parmelee repeatedly violated 18 U.S.C. § 2252A(a)(5)(B) leads to the conclusion that Parmelee is properly subject to a higher statutory maximum sentence achieved through the imposition of consecutive terms of imprisonment.

10. The district court, in fact, conceded the possibility that Apprendi would not prohibit application of the cross-reference in this case when it stated:

> Now, in this case, of course, with the conviction of four counts, which under the statute at least he could be sentenced consecutively for a total of 20 years [240 months] imprisonment, even the enhanced sentence under guideline § 2G2.2 would not reach that level, so it might be argued that Apprendi and its holding do not directly fit the facts of this case.

App. at 291–92.

11. To the extent that Parmelee argues that *United States v. McCulligan,* 256 F.3d 97 (3d Cir.2001) compels a different result, he is in error. In *McCulligan,* the defendant was convicted of assaulting a federal officer under a statute that established separate offenses based on how dangerous the assault was, with the least dangerous assault having a one-year statutory maximum, and the other two types of assaults having a statutory maximum of three years. 256 F.3d at 99, 102. Although

U.S.S.G. § 5G1.2 provides that "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." The "total punishment" is the "combined length of the sentences" which are "formally imposed on each count in a multiple count case," and "is determined by the adjusted combined offense level." U.S.S.G. § 5G1.2, Commentary; *see also* U.S.S.G. § 3D1.5 (stating that the "combined offense level" should be used "to determine the appropriate sentence in accordance with the provisions of Chapter Five").

Here, the Guidelines stated that the "total punishment," based on an offense level of 32 and a criminal history category of II, was to be selected from a range of 135 to 168 months. *See* U.S.S.G. Chapter 5, Part A, Sentencing Table. Pursuant to § 5G1.2(d), the district court had discretion to order that the sentences for each count of conviction be served consecutively to the extent necessary to create a total punishment within the range of 135 to 168 months.[12]

■ Because *Apprendi* does not prohibit application of the § 2G2.4(c)(2) cross-reference in this case, the district court erred by declining to apply it. The district court stated it could find, by a preponderance of the evidence, that there was present in this case "the receiving, transporting, shipping and/or advertising of material ... in addition to the mere possession." App. at 290–91. U.S.S.G. § 2G2.4(c)(2) mandates that "[i]f the offense involved trafficking in material involving the sexual exploitation of a minor (including receiving, transporting, shipping, advertising, or possessing material involving the sexual exploitation of a minor with intent to traffic), apply § 2G2.2." U.S.S.G. § 2G2.4(c)(2).

the jury was not instructed to, nor did it find any facts beyond those required for a simple assault, the sentencing court imposed a sentence for the assault conviction that exceeded the one-year statutory maximum. In *McCulligan*, the Government contended that the sentence actually imposed did not offend *Apprendi* because it was less than the statutory maximum of a separate count of conviction of which he was also convicted, *i.e.*, destroying government property. *Id.* at 105. This Court stated that *Apprendi* itself foreclosed the argument that mistakes in determining the sentence on one count may be ignored so long as a greater sentence might have been imposed on another count, because in *Apprendi*, the constitutional question was whether the 12-year sentence imposed on the count at issue was permissible given that it was above the 10-year maximum for the offense charged in that count. *Id.* Accordingly, the sentencing court could not impose a sentence on the assault conviction which exceeded that offense. *Id.* at 105–06. Here, by contrast, the Government does not seek to impose a sentence on each count that exceeds the maximum for each count. *See* page 594, note 13, infra.

12. Parmelee concedes that "a line of case law, accurately cited by the government" repudiates the notion that *Apprendi* is violated when sentences for multiple counts of conviction are ordered to be served consecutively. Respondent's Brief at 11–12. Indeed, overwhelmingly, the circuit courts have held that the stacking of consecutive sentences pursuant to U.S.S.G. § 5G1.2(d) to create a total sentence that exceeds the statutory maximum for a particular count of conviction does not violate *Apprendi*. *See, e.g., United States v. McLean,* 287 F.3d 127, 137 (2d Cir.2002); *United States v. McWaine,* 290 F.3d 269, 276 (5th Cir.2002); *United States v. Campbell,* 279 F.3d 392, 401–02 (6th Cir.2002); *United States v. Buckland,* 289 F.3d 558, 570–71 (9th Cir.2002); *United States v. Price,* 265 F.3d 1097, 1107–09 (10th Cir.2001); *United States v. Angle,* 254 F.3d 514, 518–19 (4th Cir.2001); *United States v. Caldwell,* 255 F.3d 532, 533–34 (8th Cir.2001); *United States v. Parolin,* 239 F.3d 922, 929–30 (7th Cir.2001).

Even if an individual is convicted for possession of child pornography, the Guidelines expressly contemplate more severe punishment by application of U.S.S.G. § 2G2 if the conduct involved something more than "simple possession." *See, e.g., United States v. Johnson,* 221 F.3d 83, 97–98 (2d Cir.2000). The conditions specified in the U.S.S.G. § 2G2.4 cross-reference were satisfied; application of the cross-reference was thus mandatory. *See United States v. Harvey,* 2 F.3d 1318, 1326 (3d Cir.1993). The district court was thus required to apply the higher base offense level and the specific offense characteristics of U.S.S.G. § 2G2.2.

The evidence presented at trial established that Parmelee downloaded, and therefore "received" pornographic images from the internet. In addition to merely receiving such pornography, however, Parmelee also stored it on easily distributable CD–Rs which he intended to barter with other people for programs or services. That evidence supports the district court's provisional finding that Parmelee trafficked in child pornography by receiving, transporting, shipping, and/or advertising, in addition to merely possessing, pornographic images. *See also United States v. Horn,* 187 F.3d 781, 791 (8th Cir.1999) (explaining that "exchange or barter is a form of 'trafficking.' 'Traffic,' like 'trade,' includes both 'the business of buying and selling for money' and 'the business of exchanging commodities by barter ...' ").

Because the district court stated that it could find by a preponderance of the evidence that the requirements for application of the cross-reference had been satisfied, and because the evidence presented at trial supports such a finding, the court should have applied the cross-reference, and enhanced the applicable guidelines range accordingly, as recommended by the pre-sentence report.

To accommodate the requirement of U.S.S.G. § 5G1.2(d) that the total sentence for all four counts of conviction fall within the applicable guidelines range of 135 to 168 months, as well as abide by the five-year maximum for each count, the district court could have imposed sentences on each count under the statutory maximum (i.e., 60 months) and run such sentences consecutively to achieve the recommended total punishment range.[13]

■ Because the district court refused to apply the cross-reference to U.S.S.G. § 2G2.2, it did not have the opportunity to consider whether additional sentencing enhancements under that section applied. Had the district court applied § 2G2.2, it should have additionally considered the distribution enhancement under U.S.S.G. § 2G2.2(b)(2), and the enhancement for material involving sadistic conduct under U.S.S.G. § 2G2(b)(3); the evidence presented at trial supports the application of both enhancements. Application of these two enhancements would subject Parmelee to an adjusted offense level of 32, the same level calculated by the Pre–Sentence Investigation Report, albeit by a slightly dif-

---

**13.** As recommended by the Government, the district court could have imposed a 34–month sentence on counts 1, 2, and 3, and a 33–month sentence on count 4, resulting in a total sentence of 135 months. *See* Reply Brief for Appellant at 5. Alternatively, the court could have imposed a 60–month sentence on counts 1 and 2 to run consecutively, a 60–month sentence on count 3, with 15 months running consecutively and 45 months running concurrently (totaling 135 months), and a 60–month sentence on count 4, to run concurrently with the other sentences. In either scenario, because each count of conviction would support a sentence that does not exceed the 60–month statutory maximum term for that count, *Apprendi* would not be implicated.

ferent route.[14]

## IV.

Based on the foregoing reasons, we reverse Parmelee's sentence and remand this case to the district court for resentencing consistent with this opinion in light of Parmelee's present status.[15] We direct the district court to schedule Parmelee's resentencing as promptly as its schedule will permit.

---

**14.** As explained in note 4,, the Government concedes that the five-level enhancement under U.S.S.G. § 2G2.2(b)(4) does not properly apply to Parmelee. Nonetheless, because sufficient evidence exists that Parmelee planned to use the pornographic photographs to barter with other people, or in other words possessed with intent to distribute, the distribution enhancement in U.S.S.G. § 2G2.2(b)(2) applies. Because this enhancement also calls for a five-level enhancement, the total adjusted offense level remains the same.

**15.** At oral argument, counsel for the United States informed the Court that Parmelee had been released after completing the custodial portion of his sentence and was serving a sentence for supervised release. The Government could not say, however, where Parmelee was serving such a sentence. In a subsequent letter to the Court, the Government reported that Parmelee was serving his supervised release in Indiana. The Government further related that on December 20, 2002, Judge Robert L. Miller of the United States District Court of the Northern District of Indiana revoked Parmelee's supervised release and imposed a custodial sentence of six months, based on Parmelee's failure to report in person to his probation officer following his release from custody.