**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1036
_____

UNITED STATES OF AMERICA

v.

ANTHONY CHICCINI,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:18-cr-00255-001)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 24, 2022
_____

Before:  CHAGARES, Chief Judge, McKEE and MATEY, Circuit Judges.

(Filed: April 6, 2022)

_____

OPINION*
_____

CHAGARES, Chief Judge.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Anthony Chiccini pled guilty to three counts of possessing and receiving child pornography and was sentenced to 235 months of imprisonment. Chiccini argues that the District Court incorrectly calculated his sentencing guidelines range by failing to apply a two-level offense reduction under United States Sentencing Commission Guidelines Manual (the "Guidelines" or "U.S.S.G.") § 2G2.2(b)(1) for individuals convicted of receipt but who did not distribute or intend to distribute the material. We will vacate Chiccini's sentence and remand for resentencing for the reasons we explain below.

I.

In 2018, Adobe Systems Inc. submitted nine tips to the National Center for Missing and Exploited Children regarding an Adobe account belonging to 73-year-old Chiccini that contained "numerous images depicting child pornography." Presentence Report ("PSR") ¶ 7. The case was referred to the Federal Bureau of Investigation ("FBI"), which conducted a search of Chiccini's residence. After a forensic examination, the FBI uncovered over 1,300 images on Chiccini's desktop computer, smartphone, laptop, and Adobe Cloud account. Chiccini was charged with three counts of possessing and receiving child pornography (hereinafter, "the material" or "the depictions"). Counts One and Two charged a violation of 18 U.S.C. § 2252(a)(2) for "receipt" of the material, and Count Three charged a violation of 18 U.S.C. § 2252(a)(4)(B) for "possession" of the material. Chiccini pled guilty to both the receipt and possession offenses.

"Receipt" carries steeper penalties than "possession" under 18 U.S.C. § 2252. Unlike simple possession, which has no statutory mandatory minimum, receipt carries a five-year mandatory minimum sentence. 18 U.S.C. § 2252(b)(1). The two offenses are

2

also treated differently in the Guidelines.  The Guidelines provide a base offense level of 18 for possession and 22 for receipt.  U.S.S.G. § 2G2.2(a).  But a defendant convicted of receipt has an opportunity to receive a two-level reduction in his base offense level if his "conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor" and he "did not intend to traffic in, or distribute, such material." Id. § (b)(1).

The PSR calculated Chiccini's base offense level at 22 pursuant to U.S.S.G. § 2G2.2(a)(2).  It then recommended several enhancements that brought the final adjusted offense level to 37.  The PSR did not, however, recommend a two-level reduction pursuant to U.S.S.G. § 2G2.2(b)(1).  Neither party objected to the PSR's calculation, and the District Court adopted it.  With a final offense level of 37, the Guidelines range was 235-293 months of imprisonment.  Had two levels been subtracted pursuant to § 2G2.2(b)(1), the range would have been 188-235 months.

The District Court imposed a sentence of 235 months of imprisonment, which was at the bottom of the Guidelines range but above the mandatory minimum.  Chiccini timely appealed his sentence.

## II.[1]

Pursuant to Federal Rule of Criminal Procedure 52(b), we review the District Court's failure to apply the two-level Guidelines reduction for plain error because Chiccini failed to raise the issue before the District Court.  See United States v. Aguirre-

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Miron, 988 F.3d 683, 687 (3d Cir. 2021).  Under plain-error review, the defendant must demonstrate that there is: "(1) an error, (2) that is plain, and (3) that the plain error affects his substantial rights."  Id.  In most cases, the phrase, affects substantial rights "means that the error must have been prejudicial: [i]t must have affected the outcome of the district court proceedings."  United States v. Olano, 507 U.S. 725, 734 (1993).  Once all three prongs are met, we may exercise our discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings."  Rosales-Mireles v. United States, 138 S. Ct. 1897, 1905 (2018) (quoting Molina-Martinez v. United States, 578 U.S. 189, 914 (2016) (citations omitted)).

A district court must begin every sentencing by "correctly calculating the applicable Guidelines range."  Gall v. United States, 552 U.S. 38, 49 (2007).  We have emphasized that "a correct Guidelines calculation is crucial to the sentencing process . . . and have admonished that because the Guidelines still play an integral role in criminal sentencing . . . the entirety of the Guidelines calculation [must] be done correctly."  United States v. Boney, 769 F.3d 153, 159 (3d Cir. 2014) (cleaned up).

Regardless of the ultimate sentence, an error in calculating the Guidelines range "can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."  Molina-Martinez, 578 U.S. at 198; see also United States v. Payano, 930 F.3d 186, 190 (3d Cir. 2019).  With respect to the "fairness and integrity" portion of plain error review, the Supreme Court has made clear that the "risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error

4

because of the role the district court plays in calculating the range and the relative ease of correcting the error." Rosales-Mireles, 138 S. Ct. at 1908.

A.

The two-level reduction in § 2G2.2(b)(1) applies where "the evidence did not establish an intent to traffic or distribute the illicit images." United States v. Brown, 578 F.3d 221, 222 (3d Cir. 2009). Here, the Government failed to present any evidence that Chiccini intended to traffic or distribute the material. The Government submits that Chiccini "transported files from the Internet into his cloud account." Gov. Br. 20. But the act of downloading images into a personal cloud account, without more, does not demonstrate an intent to distribute, and in fact, defines the act of receiving or possessing the images. See United States v. Parmelee, 319 F.3d 583, 594 (3d Cir. 2003) ("[The defendant] downloaded, and therefore 'received' pornographic images from the internet"); see also United States v. Miller, 527 F.3d 54, 72 (3d Cir. 2008) (noting that possession is the lesser included offense of receipt). Based on the record, Chiccini's conduct was limited to receipt, and he should have received the two-level reduction in § 2G2.2(b)(1).

The Government argues that other Courts of Appeals have held that mere "transportation" of the materials is enough to disqualify a defendant from the two-level reduction because Section 2G2.2's commentary defines "distribution" as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." U.S.S.G. § 2G2.2 cmt. n.1 (emphasis added). The Government is correct that

5

several decisions have defined distribution or intent to distribute as including the "transfer" of material. See, e.g., United States v. Ramos, 695 F.3d 1035, 1041 (10th Cir. 2012) (holding that an act related to the transfer of child pornography constitutes distribution, including "when an individual uses a peer-to-peer network file-sharing program with knowledge that the program will deposit downloaded child-pornography files into a shared folder accessible to other users—e.g., rendering files only a mouse-click away"); United States v. Layton, 564 F.3d 330, 335 (4th Cir. 2009) (same); United States v. Fore, 507 F.3d 412, 415–16 (6th Cir. 2007) (holding that a defendant found in possession of printed images while driving from Florida to Ohio did not qualify for a two-level reduction).

We have yet to rule on whether "any act . . . related to the transfer of material" constitutes distribution for purposes of the two-level reduction in § 2G2.2(b)(1), and we need not do so in this case. Even if this Court adopted the rule that transportation or actions "related to the transfer" of material constitute distribution, the facts of record do not amount to transportation. The above cases involved defendants storing images in shared locations that are accessible to others (or, in the case of Fore, a defendant driving the material over state lines). Here, the only alleged "transportation" of images was Chiccini uploading the images to his personal Adobe Cloud account. Like any other personal account, Adobe Cloud requires private credentials, including a password, to access the stored files. In the age of cloud computing, the typical case of possessing or receiving child pornography will involve downloading the material from the internet and uploading it to some sort of private location. But this does not necessarily mean

6

transportation to a <u>shared</u> folder or network. In this case, there is no evidence that Chiccini uploaded the material to any sort of shared network or shared his Adobe Cloud credentials with anyone. Without more, Chiccini's conduct was "limited" to receiving the material, which he did by storing it in a private, password protected account.

## B.

We turn to whether relief is appropriate in this case. As discussed above, the District Court erred in failing to apply the two-level reduction in § 2G2.2(b)(1). We next determine if this error was plain. An error is "plain" if it is "clear or obvious." <u>Aguirre-Miron</u>, 988 F.3d at 688 (quoting <u>Rosales-Mireles</u>, 138 S. Ct. at 1904). The error "need not be clear or obvious under a 'perfectly analogous case,' or even under the case law of the circuit . . . ." <u>United States v. Scott</u>, 14 F.4th 190, 198 (3d Cir. 2021) (quoting <u>United States v. Irvin</u>, 369 F.3d 284, 290 (3d Cir. 2004)) (citation omitted). Here, the plain language of the Guidelines directs courts to "decrease [the base offense level] by **2** levels" if a defendant was convicted of receipt but his "conduct was limited to the receipt or solicitation of material" and he "did not intend to traffic in, or distribute, such material." U.S.S.G. § 2G2.2(b)(1). Based on the current record, Chiccini's conduct was limited to "receipt" of material into a private account, and he did not intend to distribute that material. As a result, the error was plain. <u>See</u> <u>Aguirre-Miron</u>, 988 F.3d at 688 (holding that error was plain based on the "plain meaning of the . . . Guidelines"). <u>Cf.</u> <u>United States v. Stinson</u>, 734 F.3d 180, 187 (3d Cir. 2013) ("That error was clear in light of the plain language of the relevant Guidelines provision and the evidence before the District Court.").

7

We must also determine whether the plain error was prejudicial to Chiccini. To meet this prong, the defendant need only "'show a reasonable probability that, but for the error,' the outcome . . . would have been different." Rosales-Mireles, 138 S. Ct. at 1904–05 (quoting Molina-Martinez, 578 U.S. at 194). In the context of sentencing, an incorrectly calculated Guidelines range "presumptively satisfies the prejudice prong of plain-error review because of its 'centrality' to a district court's sentence." Payano, 930 F.3d at 190 (quoting Molina-Martinez, 578 U.S. at 200). See also Aguirre-Miron, 988 F.3d at 689. The Supreme Court has held that "whether or not the defendant's ultimate sentence falls within the correct range[,]" the miscalculated Guidelines range "itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." Molina-Martinez, 578 U.S. at 198. We have explained that, "'[a]bsent unusual circumstances,' the defendant need not show more than that he was sentenced under a plainly erroneous Guidelines range." Aguirre-Miron, 988 F.3d at 689 (quoting Molina-Martinez, 578 U.S. at 201). Thus, we begin with the presumption of prejudice. On top of this presumption, the fact that the District Court sentenced Chiccini to the bottom of the incorrect Guidelines range may indicate that Chiccini would have received a lower sentence if the District Court had calculated the range correctly. And the Government has not "point[ed] to parts of the record . . . to counter" the presumption of prejudice. Aguirre-Miron, 988 F.3d at 689. As a result, the error was prejudicial to Chiccini.

Having determined that the District Court committed plain error, we must decide whether to exercise our discretion to cure the error. Aguirre-Miron, 988 F.3d at 689;

Stinson, 734 F.3d at 184.  We exercise this discretion "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  Rosales-Mireles, 138 S. Ct. at 1905.  Here, the District Court sentenced Chiccini under an incorrect Guidelines' range.  The "risk of unnecessary deprivation of liberty" to Chiccini based upon an incorrect Guidelines calculation undermines the fairness of the proceedings.  Id. at 1908. See, e.g., United States v. Howell, No. 18-3216, 2021 WL 3163879, at *5 (3d Cir. July 27, 2021) ("[H]ad the court correctly calculated the Guidelines range, [the defendant] would have been sentenced under a lower range, and a failure to correct this error will seriously affect the public reputation of judicial proceedings.").  A "reasonable citizen" would rightly bear a "diminished view of the judicial process . . . if courts refused to correct obvious errors . . . that threaten to require individuals to linger longer in federal prison than the law demands . . . ."  Rosales-Mireles, 138 S. Ct. at 1908 (quoting United States v. Sabillon-Umana, 772 F.3d 1328, 1333 (10th Cir. 2014)).  Finally, correcting a sentencing error is not overly burdensome to the District Court.  Aguirre-Miron, 988 F.3d at 690; Payano, 930 F.3d at 199.  Considering these factors, we will exercise our discretion to cure the plain error.  We will vacate Chiccini's sentence and remand for resentencing.[2]

---

[2] Chiccini also asks for resentencing on the basis that his due process rights were violated when the District Court reviewed two victim impact statements from victims who did not appear in any of Chiccini's images.  Because we will remand for resentencing due to the Guidelines calculation error, we decline to reach this issue.

## III.

For the foregoing reasons, we will vacate Chiccini's sentence and remand for resentencing.

MATEY, *Circuit Judge.*

Respectfully, I reach a different conclusion based on the ordinary meaning of the Guidelines and conclude the District Court did not err, let alone plainly, by declining to apply § 2G2.2(b)(1) because Chiccini's conduct was not "limited to the receipt or solicitation of material involving the sexual exploitation of a minor." § 2G2.2(b)(1)(B).[1] To determine whether a defendant's conduct was "limited to receipt or solicitation" the sentencing court must consider all "relevant conduct," including "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). "The relevant criminal conduct need not be conduct with which the defendant was charged" nor even acts "over which the federal court has jurisdiction." United States v. Dickler, 64 F.3d 818, 831 (3d Cir. 1995) (citations omitted).

Here, the District Court recognized that Chiccini transported, through interstate

---

[1] One of the two requirements applicable when, as here, the base offense level is 22. § 2G2.2(b)(1). Likely Chiccini also intended to "traffic in, or distribute" the abusive material. § 2G2.2(b)(1)(C). Uploading depictions of child abuse to an interstate cloud account, "relate[s] to the transfer [or transportation] of material involving the sexual exploitation of a minor," and so likely amounts to distribution. § 2G2.2 cmt. n.1. That is because the term "distribute" in § 2G2.2(b)(1)(C) includes conduct broader than needed for distribution under § 2252(a)(2). United States v. Husmann, 765 F.3d 169, 175–76 (3d Cir. 2014). And "an *intent to distribute* is not required for an act to qualify as 'distribution' under § 2G2.2(b)." United States v. Ramos, 695 F.3d 1035, 1044 (10th Cir. 2012).

commerce,[2] a massive collection of over 1,000 images documenting child abuse[3] into his Adobe cloud account. *See* 18 U.S.C. § 2252A(a)(1); United States v. Manzano, 945 F.3d 616, 633 (2d Cir. 2019) (Parker, J., concurring) (explaining interstate hosting of cloud computer storage satisfies the elements of transportation); see also United States v. Fall, 955 F.3d 363, 374–75 (4th Cir. 2020) (affirming conviction where defendant uploaded child pornography into a Dropbox account); United States v. Davis, 859 F.3d 429, 432, 434 (7th Cir. 2017) (defendant transported child pornography when he "knowingly uploaded the pornographic images to Shutterfly," an "online photo-sharing website"). This is a separate criminal offense beyond receipt, and "the simple fact that [Chiccini's] criminal conduct was not '*limited* to the receipt or solicitation of material involving the sexual exploitation of a minor,' . . . but also involved the interstate transportation of child pornography" precludes the sentence reduction. United States v. Fore, 507 F.3d 412, 415 (6th Cir. 2007). These uncontested facts[4] were enough to allow the District Court to

---

[2] In cloud storage accounts "files are stored in a shared pool of computer resources on the Internet, accessible from any computer. Users do not download and install applications on their own device or computer; all processing and storage is maintained by the [remote] cloud server." Audrey Rogers, From Peer–to–Peer Networks to Cloud Computing: How Technology Is Redefining Child Pornography Laws, 87 St. John's L. Rev. 1013, 1032–33, 1048 (2013).

[3] As the Supreme Court explained, so-called "child pornography" is a misnomer, as the images are "intrinsically related to the sexual abuse of children" and a "permanent record of the children's participation" in sexual exploitation. New York v. Ferber, 458 U.S. 747, 759 (1982). See also Adrian Vermeule, Common Good Constitutionalism 171 (2022) ("Child pornography tears at the very fabric of natural human order in ways that cannot be accounted for in a narrow calculus of immediate harms in production or use.").

[4] Chiccini raised no objection to this fact, App. 32–33, and concedes that he "stor[ed] digital images presumably obtained elsewhere online in an Adobe cloud account." Opening Br. 25.

determine, under the applicable preponderance of evidence standard, that Chiccini's conduct was not "limited to the receipt or solicitation of" child pornography. See United States v. Grier, 475 F.3d 556, 568 (3d Cir. 2007). Seeing no error, I would affirm the District Court's judgment.